683 A.2d 901

**COMMONWEALTH of Pennsylvania**

v.

**Leila CLARK, Appellant.**

Superior Court of Pennsylvania.

Submitted June 27, 1996.

Filed Sept. 10, 1996.

258

260

John J. Dean, Public Defender, Suzanne M. Swan, Assistant Public Defender, Pittsburgh, for appellant.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before CAVANAUGH and JOHNSON, JJ., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

This is an appeal from the judgment of sentence entered after a jury found appellant Leila Clark guilty of Possession of a Controlled Substance.[1] We vacate the judgment of sentence and remand for a new trial.

In 1987 or 1988, Edward Kwiatek began working as an informant for the Attorney General's Office in exchange for assistance with a theft by unlawful taking charge that had been lodged against him by his former employer. The Attorney General's Office obtained a job for Mr. Kwiatek at the Postal Service's General Mail Facility on the North Side of Pittsburgh. From October, 1989 through September, 1991, the Postal Inspector likewise employed Mr. Kwiatek as a confidential informant, instructing him to find people working at the General Mail Facility who were willing to sell him narcotics. Although he was told to develop new targets, Mr. Kwiatek was not told to target any particular individual. The Postal Inspector paid Mr. Kwiatek between $50.00 and $100.00 for each controlled "buy" and also supplemented his post office income.

Mr. Kwiatek worked with appellant Leila Clark in the Priority Mail Section of the General Mail Facility. The two spoke on a daily basis, discussing personal as well as work-related subjects. Mr. Kwiatek initiated drug discussions with

1. 35 P.S. § 780–113(a)(16).

Ms. Clark by telling her that he used cocaine and that he was "ripped off" when he purchased it.

In September of 1991, Mr. Kwiatek told Ms. Clark that he had been out the night before and that he had been ripped off in a drug transaction. Once Ms. Clark said that she could obtain cocaine, Mr. Kwiatek contacted the Postal Inspectors. He then approached her about obtaining an "eight ball" of cocaine (three and one-half grams of cocaine) and arranged a buy for the following day, September 18, 1991. That day, Mr. Kwiatek met postal inspectors before going to work. They searched him and his car, gave him $200.00, and followed him to the General Mail Facility. Mr. Kwiatek gave the money and his car key to appellant. At lunch time, appellant and another postal employee drove away in the informant's car and returned with the cocaine in the glove box. Appellant returned $50.00 of the purchase price to Mr. Kwiatek, saying that she could only obtain $130.00 or $140.00 worth of cocaine. Appellant retained $20.00 for her part in the transaction. Mr. Kwiatek thanked appellant and later told her that the drugs were really good.

On September 30, 1991, Mr. Kwiatek called appellant at her home to arrange another buy. He picked her up at her house and drove to Jacksonia Street, where appellant obtained a second eight ball. Again, the informant gave appellant $20.00.

Appellant provided a slightly altered rendition of the events. She believed Mr. Kwiatek to be her friend. Because she was newer and slower at the job, Mr. Kwiatek would assist her and clean up her backlog. While working together, the two began to discuss parties and drugs. Appellant told Mr. Kwiatek that she had an alcohol problem and that her sister was addicted to crack cocaine. Mr. Kwiatek repeatedly complained to appellant that he was "ripped off" when he purchased drugs. As a consequence, he began to ask appellant to obtain drugs for him. According to appellant, Mr. Kwiatek pleaded that he, like her sister, needed to smoke because the addiction made him sick. After about a month of these entreaties, appellant agreed to obtain cocaine for Mr. Kwiatek to "help" her "friend."

Appellant was subsequently charged with two counts each of Possession of a Controlled Substance, Possession with Intent to Deliver a Controlled Substance,[2] and Delivery of a Controlled Substance [3] as a result of the September 18, 1991 and September 30, 1991 transactions. Privately retained counsel represented appellant at trial. On August 5, 1994, the jury found appellant guilty on both counts of possession of a controlled substance and not guilty of the remaining charges. The Office of the Public Defender was appointed to represent appellant during post-sentencing and appeal proceedings. After denying post-sentence motions, the trial court sentenced appellant at each count to concurrent one (1) year periods of probation.

■ In this timely appeal from the judgment of sentence, appellant claims that trial counsel rendered ineffective assistance by failing to request or to object to the absence of a jury instruction defining the burden of proof a defendant must satisfy to establish an entrapment defense. To prevail on an ineffectiveness claim,

> a defendant must show his claim to be of arguable merit. In the event this threshold requirement is satisfied, the defendant must next establish that defense counsel had no reasonable basis for undertaking or failing to undertake the act or omission in question. Finally, the defendant must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. In other words, that the defendant must have suffered actual prejudice from the act or omission.

*Commonwealth v. Rainey*, 540 Pa. 220, 228, 656 A.2d 1326, 1330 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 562, 133 L.Ed.2d 488 (1995). Accordingly, we shall begin by ascertaining whether appellant's challenge to the jury instruction is of arguable merit.

**2.** *Id.* § 780–113(a)(30).

**3.** *Id.*

"Because jury instructions are the principal medium for communicating to the jury the legal bases upon which its verdict is to rest, they should be 'clear, concise, accurate and impartial statements of the law written in understandable language....'" *Commonwealth v. Ford–Bey,* 504 Pa. 284, 289, 472 A.2d 1062, 1064 (1984) (quoting ABA Standards for Criminal Justice 15–3.6(a), Commentary at 100 (citation omitted)). In charging a jury, the trial judge must clarify issues so that the jurors may comprehend the questions they are to resolve, elucidate correct principles of law applicable to the pending case, and endeavor to make those principles understandable in plain language. *Commonwealth v. Sherlock,* 326 Pa.Super. 103, 106, 473 A.2d 629, 631 (1984).

When reviewing jury instructions for reversible error, an appellate court must read and consider the charge as a whole. *Commonwealth v. Dietterick,* 429 Pa.Super. 180, 188, 631 A.2d 1347, 1352 (1993), *appeal denied,* 538 Pa. 608, 645 A.2d 1312 (1994). We will uphold an instruction if it adequately and accurately reflects the law and is sufficient to guide the jury through its deliberations. *Commonwealth v. Ahlborn,* 441 Pa.Super. 296, 300, 657 A.2d 518, 520 (1995). Error will not be predicated on isolated excerpts. Instead, it is the general effect of the charge that controls. *Commonwealth v. Zewe,* 444 Pa.Super. 17, 28, 663 A.2d 195, 201 (1995), *appeal denied,* 544 Pa. 629, 675 A.2d 1248 (1996); *Commonwealth v. Anderson,* 410 Pa.Super. 524, 526, 600 A.2d 577, 578 (1991), *appeal denied,* 531 Pa. 644, 612 A.2d 983 (1992). An erroneous charge warrants the grant of a new trial unless the reviewing court is convinced beyond a reasonable doubt that the error is harmless. *Dietterick,* 429 Pa.Super. at 189, 631 A.2d at 1352.

Appellant Clark challenges the adequacy of the entrapment charge. Pennsylvania has adopted an objective standard of entrapment, focusing on police conduct and tactics, rather than on a defendant's predisposition to commit crime:

A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment

if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by . . .

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

18 Pa.C.S.A. § 313(a). As such, the factfinder must determine if the police conduct would have induced an innocent individual to commit a crime. *Commonwealth v. Harris*, 431 Pa.Super. 222, 225, 636 A.2d 210, 211 (1994). The defendant bears the burden of proving by a preponderance of the evidence that his conduct occurred in response to an entrapment. 18 Pa.C.S.A. § 313(b).

Whether entrapment has occurred is a question for the jury unless the evidence points to only one conclusion, thereby making it a question of law for the court. *Harris*, 431 Pa.Super. at 227–28, 636 A.2d at 213. Moreover, if a defendant presents evidence of entrapment, a trial court may not refuse to provide an entrapment instruction based on a jury's potential incredulity. *Commonwealth v. Lightfoot*, 538 Pa. 350, 354–55, 648 A.2d 761, 764 (1994); *Harris, supra* (if a defendant presents evidence of entrapment, an entrapment instruction should be given no matter how unreasonable the court may believe the defendant's claims to be). Accordingly, when deciding whether to instruct on entrapment, a trial judge must consider the possibility that the jury will credit the testimony of the defendant. *Harris*, 431 Pa.Super. at 228, 636 A.2d at 213.

In this case, the trial court acknowledged that appellant Clark had presented testimony of entrapment and therefore allowed the question to go to the jury with the following instruction:

Entrapment is a defense in a criminal charge. An accused who is entrapped cannot be convicted even though he or she has committed a crime. An accused is not entrapped merely because the police gave him or her an opportunity to

commit a crime or merely because the police outwitted him or her.

The law allows the police to use some trickery and deception in catching criminals. However, if the police go too far, if they use the kind of tactics that might lead a law abiding person to commit a crime, the defense of entrapment may be available to the accused.

**The accused has the burden of proving the entrapment defense by a fair preponderance—by a preponderance of the evidence.** There are two elements to the defense.

First, that a police officer or person acting in cooperation with a public law enforcement officer, that is, Mr. Kwiatek in this case, perpetrated an entrapment. Second, that the accused's conduct occurred in response to that entrapment.

. . . .

Once again, even though you may believe that the accused committed the crimes as charged, you must find her not guilty **if you are satisfied by a preponderance of the evidence,** first, that the person acting in cooperation with a law—public law enforcement official, Mr. Kwiatek, perpetrated an entrapment as I have defined that term. Second, that the accused did what she did in response to that entrapment.

N.T. 8/4–5/94 at 183–84, 190–92.

The jury interrupted its deliberations to ask the court to repeat its definition of entrapment. More importantly, the jury raised a question as to the burden of proof: "[W]e need to know whose responsibility it is to prove entrapment. Does the burden lie with the state or is it upon the defense?" N.T. 8/4–5/94 at 201. The court answered that "[t]he accused has the burden of proving the entrapment defense by a fair preponderance of the evidence." *Id.*

After the jury returned to the deliberation room, the trial judge remarked that he had not defined "preponderance of the evidence." He then asked the attorneys for a definitional instruction, which he intended to give if the jury had addition-

al questions. The jury reached its verdict without asking any other questions, and the court did not provide the definition.

Entrapment is one of the few affirmative defenses that places the burden of persuasion on the defendant. *See e.g.* 18 Pa.C.S.A. §§ 314, 315 (the legislature has placed the burden on a defendant who seeks to obtain either a verdict of guilty but mentally ill or not guilty by reason of insanity to establish insanity by a preponderance of the evidence); *Id.* § 908(b) (a defendant must satisfy one of the exceptions to the charge of possession of a deadly weapon by a preponderance of the evidence); 35 P.S. § 780–121 (a defendant charged with possession of a controlled substance must prove by a preponderance that he or she was registered to possess that controlled substance and exempt from the statute's operation). Nevertheless, the standard jury instruction for entrapment does not include a definition of the term "preponderance of the evidence." *See* Pennsylvania Criminal Suggested Standard Jury Instructions, Entrapment, 8.313 (Date of Last Revision, August 1985).

Appellant suggests that we take guidance from the standard instruction on insanity, another of the affirmative defenses imposing a preponderance burden on defendants:

> The defendant has the burden of proving an insanity defense by a preponderance of the evidence. **"By a preponderance" means by the greater weight of the evidence.** Therefore you can find the defendant not guilty by reason of legal insanity only if you are satisfied beyond a reasonable doubt that he committed the otherwise criminal act charged and you are also satisfied by a preponderance of the evidence [that the defendant established the elements of the insanity defense].

Pennsylvania Criminal Suggested Standard Jury Instructions, Insanity, 5.01A (Date of Last Revision, December 1988). We are also guided by case law concerning a defendant's burden to prove by a preponderance of the evidence mitigating circumstances under the death penalty statute. *Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716 (1992) (citing 42 Pa.C.S.A. § 9711(c)(1)(iii)). In *Williams,* the trial court not

only defined the term "preponderance of the evidence" but also contrasted it with reasonable doubt:

The defense must prove mitigating circumstances but they must prove it by a preponderance of the evidence and that is a lesser standard, not as great a standard as beyond a reasonable doubt. A preponderance of the evidence in essence is proof that something is more likely than not.

*Id.* at 285, 615 A.2d at 726. In both situations, our courts recognized the need to define the defendant's quantum of proof.

 The defense has an absolute right to have the jury instructed as to the quantum of proof required to establish guilt. *Commonwealth v. Bishop,* 472 Pa. 485, 490, 372 A.2d 794, 796 (1977). To that end, the trial court must provide the jury with a positive instruction fully and accurately defining that burden, *i.e.,* "beyond a reasonable doubt." *Commonwealth v. Young,* 456 Pa. 102, 111, 317 A.2d 258, 260 (1974) (defendant was denied a fair trial because the trial court gave the jury no guidance on the meaning of "beyond a reasonable doubt"). *See Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (a constitutionally deficient jury instruction in a criminal case as to the definition of reasonable doubt, for purposes of the prosecution's burden of proving guilt beyond a reasonable doubt, is not amenable to harmless error analysis and will always invalidate a conviction). By analogy, the trial court should also provide the jury with an instruction not only identifying the quantum of proof required to establish an affirmative defense to guilt, but also defining that burden, *i.e.,* "preponderance of the evidence."

 In this case, the trial court began its charge by elaborating on the Commonwealth's burden of proving the elements of the offenses charged beyond a reasonable doubt. The court then defined that burden as "a doubt that would cause a reasonably careful and sensible person to pause or hesitate in acting in a matter of importance in his or her life." N.T. 8/4–5/94 at 173. A preponderance of the evidence, by contrast, "is such proof as leads the trier of fact to find that

the existence of a contested fact is more probable than its non existence." *Williams,* 532 Pa. at 285, 615 A.2d at 726. Although the trial court subsequently, identified the defendant's corresponding burden, it never defined that burden or compared it to the Commonwealth's higher burden. Further, the phrase "preponderance of the evidence" is not so clear as to render a definitional instruction superfluous. A trial court should provide instructions clarifying legal terms whose meanings laymen do not necessarily understand without judicial guidance. *Commonwealth v. Robinson,* 284 Pa.Super. 152, 155–56, 425 A.2d 748, 750 (1980) (a simple assault instruction was insufficient because the trial court did not define such legal terms as "attempt," "intentionally," "knowingly or recklessly," and "imminent"). The absence of that clarification may have caused the jury to apply the higher "beyond a reasonable doubt" burden to the evidence of entrapment. Accordingly, we find arguable merit to appellant's challenge to the entrapment instruction.

That defense counsel attempted to define "preponderance of the evidence" during summation does not affect our analysis. N.T. 8/4–5/94 at 145–46. Both before and after that summation, the trial judge charged the jury that he would educate them as to points of law and that the jury was to decide the case by applying the court's instructions to the evidence presented. Further, the court advised the jury that it was "not required to accept the arguments of either lawyer." N.T. 8/4–5/94 at 175.

Nor are we swayed by the Commonwealth's contention that defense counsel was relieved of the obligation to object to or amend the charge given because that charge mirrored the standard entrapment instruction. The Standard Jury Instructions are not conclusive, but are merely a guide. *Commonwealth v. Morningwake,* 407 Pa.Super. 129, 139, 595 A.2d 158, 163 (1991), *appeal denied,* 529 Pa. 618, 600 A.2d 535 (1991), *impliedly overruled on other grounds in* 417 Pa.Super. 473, 612 A.2d 1037 (1992); *Commonwealth v. Shadron,* 471 Pa. 461, 470, 370 A.2d 697, 701 (1977) (concurring opinion by Manderino, J.). Our courts have approved a trial court's

reliance on standard instructions when those instructions complied with precedent. *See e.g. Commonwealth v. Khamphouseane,* 434 Pa.Super. 93, 106, 642 A.2d 490, 496 (1994), *appeal denied,* 538 Pa. 666, 649 A.2d 669 (1994) (trial court's charge regarding evidence of a criminal defendant's good character quoted almost verbatim from the Suggested Standard Jury Instructions and was consistent with Supreme and Superior Court cases that have examined jury instructions on evidence of good character; counsel will not be deemed ineffective for failing to object to that instruction); *Commonwealth v. Hassine,* 340 Pa.Super. 318, 349, 490 A.2d 438, 454 (1985) (challenge to jury instruction failed when the instruction given tracked the language of the standard instruction and conformed with precedent). This court has cited the standard instruction on entrapment, indicating our general approval. *See Commonwealth v. Lucci,* 443 Pa.Super. 431, 435–36, 662 A.2d 1, 2–3 (1995), *appeal denied,* 543 Pa. 710, 672 A.2d 305 (1995) (citing notes to Standard Jury Instructions on entrapment as support for the conclusion that Pennsylvania applies an objective approach to the defense); *Commonwealth v. McGuire,* 339 Pa.Super. 320, 328–29, 488 A.2d 1144, 1149 (1985) (same). But we have never before been asked to determine if the standard instruction should include a definition of the defendant's burden of proof. As such, defense counsel was not entitled to rely on that instruction as conclusive. *Compare Commonwealth v. Saunders,* 529 Pa. 140, 144, 602 A.2d 816, 817–18 (1992) (although our Supreme Court had previously cited the standard alibi instruction, noting its general approval thereof, it had never been called on to decide whether the jury should be advised to acquit if the alibi evidence, "even if not wholly believed," raised a reasonable doubt about the defendant's guilt; Supreme Court considered whether trial counsel had rendered ineffective assistance by failing to object to the omission of the quoted phrase from the standard charge).

██ We acknowledge that counsel cannot be deemed ineffective for failing to predict a change in the law. *Commonwealth v. Davis,* 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). The

Commonwealth objects to any finding of ineffectiveness by characterizing appellant's call for a definitional instruction as a change from this court's position in *Commonwealth v. Suggs,* 289 Pa.Super. 44, 432 A.2d 1042 (1981). In *Suggs,* a panel of this court rejected the defendants' claim that the trial court had confused the jury by charging that the defendants bore the burden of proving entrapment by a preponderance of the evidence. *Id.* at 60, 432 A.2d at 1050. The *Suggs* court was not asked to, and did not, address the need for an additional instruction defining that burden for the jury. As such, we do not view our pronouncement as a change from existing law.

Rather, we follow existing law by insisting that the trial court clarify issues and legal terms, including the applicable burden of proof. Furthermore, our elaboration on the entrapment charge is not wholly without antecedent. Specifically, a panel of this court, in responding to a defendant's claim that the trial court had improperly instructed the jury as to the defendant's burden of proving entrapment, noted that on two occasions the trial court used the phrase "preponderance of the evidence" and, more importantly, **defined that term for the jury.** *Commonwealth v. Jones,* 242 Pa.Super. 303, 309 n. 4, 363 A.2d 1281, 1284 n. 4 (1976).

As stated, we find arguable merit to appellant's challenge to the entrapment instruction. Entrapment was the theory of the defense's case. By failing to request or to object to the absence of a jury instruction defining the burden of proof a defendant must satisfy to establish an entrapment defense, trial counsel allowed the jury to speculate about the applicable standard. Accordingly, the jury was free to apply the only standard that had been defined, the higher "beyond a reasonable doubt" standard, to appellant's evidence. Counsel could have had no reasonable basis for so acting. Accordingly, we vacate the judgment of sentence and remand for a new trial.

Judgment of sentence vacated; remanded for a new trial. Jurisdiction relinquished.